UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00086-TBR

JAMI W. STEEG,                                                                                              Plaintiff

v.

THOMAS J. VILSACK,
SECRETARY OF AGRICULTURE                                                         Defendant

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Jami W. Steeg's *Motion in Limine* to Exclude Reference to Expert Testimony and Questioned Document. [DN 37.] Defendant Secretary of Agriculture Thomas J. Vilsack has responded. [DN 56.] No replies were filed. Fully briefed, this matter is now ripe for adjudication. For the following reasons, Plaintiff's motion to exclude reference to expert testimony and questioned document is DENIED AS MOOT IN PART and DENIED IN PART.

BACKGROUND

This matter arises out of the employment of Jami W. Steeg with the United States Department of Agriculture ("USDA").  Steeg, in her suit against Defendant Secretary of Agriculture Thomas J. Vilsack, claims that she was subjected to a hostile work environment, quid pro quo sexual harassment, and was retaliated against in violation of state and federal law. Further detail may be found in this Court's Memorandum Opinion and Order denying Defendant's motion for summary judgment. [DN 30.]

In March, 2011, Steeg was hired by the USDA as a Food Inspector.  Steeg was responsible for examining animal carcasses, specifically chickens, at the Pilgrim's Pride facility in Hickory, Kentucky.  Steeg received one performance evaluation.  This evaluation graded Steeg

1

for her performance from her hire date of March 27, 2011 until September 30, 2011. Steeg was rated "Fully Successful." [DN 22-2 at 61.]

The issue before this Court centers on the existence of a second, allegedly forged, performance evaluation. During his deposition, Steeg questioned her former supervisor, William Burgess, about two performance evaluations. The first performance evaluation rated Steeg "Fully Successful" (the "Fully Successful Evaluation"). [DN 22-6 at 67.] It was signed by Steeg and Burgess on April 14, 2011, near the beginning of her term. Defendant states that a performance evaluation is initially signed near the beginning of the evaluation period to serve as a "Work Plan." [DN 24.] The Fully Successful Evaluation was signed by Steeg and Burgess a second time, as well as by Dr. Mark Harpole, the Supervisory Public Health Veterinarian, all on October 17, 2011. The Fully Successful Evaluation covers the period from March 27, 2011 until September 30, 2011.

The second performance evaluation rated Steeg "Superior" (the "Superior Evaluation"). [DN 21-1 at 5.] The Superior Evaluation purports to show two signatures of Steeg and Burgess each, as well as the signature of Dr. Mark Harpole. All of these signatures are dated October 17, 2011. It also purports to evaluate Steeg from October 1, 2011 until September 30, 2012. When Steeg began to question Burgess about the Superior Evaluation during his deposition, Burgess responded that the document was "a fake." [DN 22-6 at 24.] According to Burgess,

> Ms. Steeg only received one rating. She was terminated during what would have been her second performance appraisal cycle. I don't know where that [Superior Evaluation] came from, but that's not my signature at the bottom, if you want to compare them. Somebody has done a fair job of trying to fake my signature, but that's not it. I think if you look, Dr. Harpole's signature does not match either.

2

[*Id.*] In a subsequent affidavit, Dr. Harpole stated that the Fully Successful Evaluation was the "only performance appraisal conducted by the USDA FSIS for the Plaintiff," and that "[t]he signature on the 2012 [Superior Evaluation] is not my signature." [DN 22-8 at 3.]

When asked about her signature on the Superior Evaluation during her deposition, Steeg responded "It doesn't even look like a full signature, but it looks different than the signature up here. I mean, I'm not going to say whether that's my signature or that's not my signature." [DN 22-2 at 50.] Additionally, when asked whether the Superior Evaluation was fake, Steeg responded "I don't know whether it is or not." [*Id.* at 52.] Defendant also asked Steeg whether she produced the Superior Evaluation at Burgess' deposition, and Steeg responded that "[i]t was something that was given to me. . . [a]nd . . . everything that was given to me from the agency, all I did was pass it forth to [my attorney]." [*Id.* at 53.]

The expert testimony Plaintiff challenges in this motion *in limine* is that of Steven A. Slyter, a handwriting expert obtained by Defendant to examine the documents and compare the signatures on the two evaluations with exemplar signatures provided by Burgess and Dr. Harpole. [DN 21-1 at 1–2.] In his expert report, Slyter states that there was a discrepancy in the signatures of Burgess and Dr. Harpole between the Fully Successful Evaluation and their exemplar signatures as compared to the Superior Evaluation. [*Id.* at 2.] Slyter offers two potential explanations but ultimately opines that the explanation with "the higher probability of being the correct explanation for the two subject signatures" is that "someone other than Mr. Burgess and Dr. Harpole wrote their names at the bottom of [the Superior Evaluation] and made an attempt to imitate the appearance of their genuine signatures." [*Id.*] Slyter also stated that "[i]t will not be possible for me to identify the writer of these two subject signatures." [*Id.* at 3.]

3

STANDARD

Using the inherent authority to manage the course of trials before it, this Court may exclude irrelevant, inadmissible, or prejudicial evidence through *in limine* rulings. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013); *Mahaney ex rel. Estate of Kyle v. Novartis Pharm. Corp.*, 835 F. Supp. 2d 299, 303 (W.D. Ky. 2011). Unless such evidence is patently "inadmissible for any purpose," *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997), though, the "better practice" is to defer evidentiary rulings until trial, *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975), so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context," *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010). A ruling *in limine* is "no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38). Consequently, the Court may revisit its *in limine* rulings at any time and "for whatever reason it deems appropriate." *Id.* (citing *Luce*, 713 F.2d at 1239).

DISCUSSION

### I. Reference to Expert Testimony

In this motion *in limine*, Plaintiff seeks an order prohibiting Defendant from referencing the expert report and testimony of Steven A. Slyter regarding the authenticity of the Superior Evaluation and the allegedly forged Superior Evaluation itself. [DN 37 at 1–2.] In a prior motion, Plaintiff filed a Motion to Exclude Expert Testimony, in which she challenged, on *Daubert* and Rule 26(a) grounds, the admissibility of Slyter's expert report and testimony. [DN 21.] In an Order dated September 16, 2016, this Court ordered supplemental briefing addressing the

4

applicability, or lack thereof, of Federal Rule of Evidence 608 in evaluating the admissibility of Slyter's expert report and testimony. [DN 43.] The parties filed their briefs simultaneously. [DN 56; 57.] Plaintiff replied. [DN 66.] Through the supplemental briefs filed by the parties and the reply brief filed by Plaintiff, however, it became clear that the parties agree that the contested document is a forgery [DN 56 at 1–2; DN 66 at 1–2], and Defendant therefore does not plan to introduce the expert report or testimony of Slyter at trial. [DN 56 at 1–2 ("As the parties appear to agree that this document contains the forged signatures of Mark Harpole and William Burgess, the United States will not need to rely on S.A. Slyter's testimony, report, or the contested document in its case-in-chief at trial).]

Because there is no longer a dispute, the Court denied Plaintiff's motion to exclude expert testimony as moot with the understanding that Defendant will not attempt to introduce the expert report or testimony of Slyter at trial. [DN 69.] The Court further noted that, should new developments at trial change this, Defendant is instructed to approach the bench before mentioning or attempting to offer the expert report or testimony into evidence. [*Id.*] Accordingly, the portion of Plaintiff's motion *in limine* that seeks to exclude reference to Slyter's expert testimony is also denied as moot with the same understanding that Defendant will not attempt to introduce such testimony or Slyter's expert report at trial. Again, should Defendant ultimately decide to introduce that evidence at trial, he is instructed to first approach the bench.

## II. Reference to Questioned Document

In Defendant's supplemental brief addressing the applicability of Rule 608, which Defendant combined with his response to this motion *in limine*, further stated that he "will rely on the specific instances surrounding the contested document for impeachment purposes" on cross-examination pursuant to Rule 608(b). [DN 56 at 2 (citing Fed. R. Evid. 608(b).]

5

Specifically, Defendant argues in his response that "possession and use of a falsified document is probative of a witness's truthfulness and credibility," and that "[a]s Steeg testified that she is responsible for the production of this falsified document at a deposition, the United States should be able to use this conduct for purposes of impeachment." [DN 56 at 2.] The Court agrees.

Rule "608(b)(1) provides that a witness's credibility may be attacked on cross-examination through questioning on specific instances of conduct relevant to credibility." *United States v. Holden*, 557 F.3d 698, 703 (6th Cir. 2009). Specifically, Rule 608(b) allows a the use of specific instances on cross-examination "if they are probative of the character for truthfulness or untruthfulness of . . . the witness . . . ." Fed. R. Evid. 608(b)(1). Rule 608(b) additionally provides, however, that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." *Id.* 608(b). In other words, while such specific instances of conduct can be inquired into on cross-examination, the questioning party is effectively "'stuck with' the response given on cross-examination." *United States v. Frost*, 914 F.2d 756, 767 (6th Cir. 1990).

Indeed, Plaintiff acknowledges in her supplemental brief on her motion to exclude expert testimony that "the Court could permit Defendant to question Ms. Steeg about the forged document but, if it does so, Defendant is stuck with Ms. Steeg's testimony denying she created the subject document." [DN 57 at 4 (citing *State Farm Mut. Auto. Ins. Co. v. Accident Victims Home Health Care Servs., Inc.*, 467 Fed. Appx. 368, 373 (6th Cir. 2012); *Frost*, 914 F.2d at 767).] The Court agrees, and therefore will deny the portion of Plaintiff's motion *in limine* that requests the Court to "prohibit any reference the existence of a questioned document . . . ." [DN 37 at 2.] While Defendant cannot introduce the document into evidence or use it to demonstrate

alleged specific instances of misconduct by Plaintiff, he can certainly inquire into it on cross-examination pursuant to Rule 608(b)(1).

## CONCLUSION

For the reasons stated herein, the portion of Plaintiff's motion *in limine* that seeks to exclude reference to Slyter's expert testimony is DENIED as MOOT with the understanding that Defendant will not attempt to introduce such testimony or Slyter's expert report at trial. The portion of Plaintiff's motion *in limine* that seeks to exclude any reference to the forged document is DENIED.

IT IS SO ORDERED.


cc: Counsel of Record