UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00086



FILED
VANESSA L. ARMSTRONG, CLERK
NOV 1 0 2016
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

**JAMI STEEG**

**v.**

**THOMAS J. VILSACK,**
**Secretary of Agriculture**

**JURY INSTRUCTIONS**

## INTRODUCTION

Members of the jury, it is now time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain the elements, or parts, of the claims and defenses in question.

You have two main duties as a juror: The first is to decide what the facts are from the evidence that you saw and heard here in Court. Deciding what the facts are is your job—not mine. Nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you and to apply it to the facts. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you during the trial and these instructions now. All of the instructions are important, and you should consider them together as a whole.

The lawyers may have talked about the law during their arguments. But if what they said is different from what I say, you must follow what I say. What I say about the law controls.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. The law does not permit you to be governed by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as I give it to you, and reach a just verdict, regardless of the consequences.

The fact that the Plaintiff is an individual and the Defendant is an agency of the United States must not enter into or affect your verdict. This case should be considered and decided by you as an action between persons of equal worth and standing in the community. Agencies of the United States are entitled to the same fair trial at your hands as private individuals. All persons, including agencies of the United States such as the United States Department of Agriculture and individual plaintiffs, stand equal before the law and are to be dealt with as equals in the court of justice.

You are to consider only the evidence in the case. Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and any facts and events that may have been admitted or stipulated. Statements and arguments by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence.

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence." Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining. It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, or say that one is any better

evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion. In our lives, we often look at one fact and conclude from it that another fact exists. In law, we call this an "inference." You are allowed to make reasonable inferences, but any inference you make must be based on the evidence in the case.

Another part of your job as jurors is to decide how credible, or believable, each witness was. This is your job, not mine. It is up to you to decide if a witness's testimony was believable and how much weight you think it deserves. You are free to believe everything that a witness said, or only part of it, or none of it at all. But you should act reasonably and carefully in making these decisions. Use your common sense and your everyday experience in dealing with other people, and then decide what testimony you believe and how much weight you think it deserves. The weight of the evidence does not necessarily depend upon the number of witnesses who testify for either side.

Some of you have taken notes during the trial. You may use any notes taken by you during trial. However, the notes should not be substituted for your memory. Remember, notes are not evidence. If your memory should differ from your notes, then you should rely on your memory and not your notes. You should not be influenced by another juror's notes.

When you go to the jury room, you will select one juror to act as your foreperson. The foreperson will preside over your discussions and will speak for you here in Court. You will take these instructions to the jury room. When you have reached a unanimous agreement, your

foreperson will complete, date, and sign your answers. Nothing I have said or done is intended to suggest what your verdict should be. That is entirely for you to decide.

Once you start deliberating, do not talk to the marshal or to anyone else, except each other, about the case. Remember that you must make your decision based only on the evidence that you saw and heard here in court. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, computer, the Internet, or any Internet service to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

If you have any questions or messages during your deliberations, you must write them down on a piece of paper, sign them, and give them to the marshal. The marshal will give them to me, and I will respond as soon as I can. I may have to talk to the parties about what you have asked, so it may take some time for me to get back to you. One more thing about messages: Do not ever write down or tell anyone outside the jury room how you stand on your votes. That should stay secret until you are finished.

Your verdict or answer to any question must be unanimous. That is, all eight (8) members of the jury must agree on any answer to the question and on the verdict. Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully

and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original opinion was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds. Listen carefully to what other jurors have to say, and then decide for yourselves if the Plaintiff has proved her case by a preponderance of the evidence.

## INSTRUCTION NO. 1

### Statement of the Case

Jami Steeg claims that, during her employment with the United States Department of Agriculture, she was subjected to hostile work environment sexual harassment, quid pro quo sexual harassment, and was retaliated against for engaging in activity protected by Title VII of the Civil Rights Act of 1964 and by the Kentucky Civil Rights Act. Jami Steeg claims that she was harassed on the basis of her gender by her supervisor, William "Bill" Burgess at the United States Department of Agriculture's Pilgrim's Pride facility where she worked in Hickory, Kentucky. Jami Steeg additionally claims that she rejected Bill Burgess's sexual advances and reported the alleged sexual harassment and, in turn, that the United States Department of Agriculture retaliated against her for opposing this behavior.

The United States Department of Agriculture denies Jami Steeg's claims of sexual harassment and retaliation and contends that Jami Steeg was not sexually harassed and was terminated for good faith, legitimate, and non-discriminatory reasons.

## INSTRUCTION NO. 2

### Burden of Proof

The term "preponderance of the evidence" is used many times in these instructions and deserves some explanation before addressing the claims and defenses involved in the case.  To establish something by a "preponderance of the evidence" means to prove that something is more likely so than it is not so.  In other words, a preponderance of the evidence means such evidence as, when considered and compared to that opposed to it, has more convincing force, and produces in your mind a belief that what is sought to be proved is more likely true than not true. It does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been established by a preponderance of the evidence in the case, you may—unless otherwise instructed—consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received into evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt."  That is a stricter standard applicable in criminal cases.  It does not apply in civil cases, such as this one. Therefore, you should disregard it.

## INSTRUCTION NO. 3

### Elements: Hostile Work Environment Sexual Harassment

Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act prohibit employers from engaging in or allowing sexual harassment in the workplace that creates a hostile work environment.

Jami Steeg claims that she was subjected to sexual harassment by Bill Burgess that created a hostile work environment. The United States Department of Agriculture is liable for the actions of Bill Burgess in Jami Steeg's claim of hostile work environment sexual harassment if Jami Steeg proves by a preponderance of the evidence, each one of the following elements:

(1)   Jami Steeg is a member of a protected group; and

(2)   Jami Steeg was subjected to unwelcome harassment by Bill Burgess; and

(3)   the harassment was based on sex; and

(4)   the harassment was sufficiently severe or pervasive to alter the conditions of employment such that a reasonable person in Jami Steeg's position would find the work environment to be hostile; and

(5)   the harassment was sufficiently severe or pervasive to alter the conditions of Jami Steeg's employment such that Jami Steeg believed her work environment to be hostile; and

(6)   Jami Steeg was terminated as a result of the hostile work environment.

Concerning the first element, "protected groups" under Kentucky and Federal civil rights laws include race, color, religion, sex, and national origin.

Concerning the third element, harassment is "based on sex" if it relates to overt, possibly offensive, sexual desires, or if it reflects anti-female animus.

Concerning the fourth and fifth elements, in determining whether the harassment was sufficiently severe or pervasive to make the work environment "hostile," you must look at all of the circumstances together, rather than single instances of harassing conduct. While individual instances of harassment may not be sufficient to satisfy these elements, the accumulated effect of all instances considered together may. Factors you may consider include, but are not limited to:

- The frequency of the harassing conduct

- The severity of the harassing conduct

- Whether the harassing conduct was persistent

- Whether harassment was physically threatening or humiliating

- Whether harassment was merely offensive utterances

- Whether the harassment was directed at Jami Steeg

- Whether the harassment unreasonably interfered with Jami Steeg's work performance

- The effect of the harassment on Jami Steeg's mental and emotional well-being

- The social context in which the behavior occurred

- The physical environment in which the plaintiff worked

Conduct that amounts only to ordinary socializing in the workplace, such as occasional horseplay, sporadic use of offensive or abusive language, tasteless jokes, and occasional teasing, does not constitute a hostile work environment. Additionally, it is not enough that the work environment was generally harsh, unfriendly, unpleasant, crude or vulgar to all employees. Rather, a hostile work environment can be found only if there is extreme conduct amounting to a material change in the conditions of Jami Steeg's employment. Discriminatory intimidation, ridicule, sexual advances, requests for sexual favors, or other verbal or physical conduct of a

sexual nature in the workplace may be sufficiently extreme to alter the conditions of employment.

## INSTRUCTION NO. 4

### Elements: Quid Pro Quo Sexual Harassment

Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act prohibit employers from engaging in or allowing sexual harassment that is "quid pro quo" in nature.

To establish a case of quid pro quo sexual harassment, Jami Steeg must prove, by a preponderance of the evidence, each one of the following elements:

(1)   Jami Steeg is a member of a protected group; and

(2)   Jami Steeg was subjected to unwelcome harassment in the form of sexual advances or requests for sexual favors from her supervisor, Bill Burgess; and

(3)   the harassment was based on sex; and

(4)   Jami Steeg's submission to the unwelcomed advances was an express or implied condition for receiving job benefits, or Jami Steeg's refusal to submit to Bill Burgess's sexual demands resulted in her termination; and

(5)   Jami Steeg's refusal to submit to Bill Burgess's sexual demands was a motivating factor in terminating her.

Concerning the first element, "protected groups" under Kentucky and Federal civil rights laws include race, color, religion, sex, and national origin.

Concerning the third element, harassment is "based on sex" if it relates to overt, possibly offensive, sexual desires, or if it reflects anti-female animus.

Concerning the fifth element, Jami Steeg must demonstrate that her refusal to submit to Bill Burgess's sexual demands or advances caused her termination. It is sufficient for this element if you find that her refusal to submit to the demands was a "motivating factor," meaning a reason, alone or with other reasons, on which the United States Department of Agriculture

relied when it terminated Jami Steeg's employment. With regard to this causal connection, an employer is entitled to operate its business using its own business judgment. Neither a court nor a jury sits as a "super personnel department" to review an employer's business decisions. As a result, you may not return a verdict for Jami Steeg just because you might disagree with the United States Department of Agriculture's decision or believe it to be harsh or unreasonable. Jami Steeg was a probationary employee at the time of her termination. Therefore, the United States Department of Agriculture could terminate Jami Steeg's employment for any reason, or no reason. However, for a quid pro quo sexual harassment claim, the United States Department of Agriculture may not terminate an employee, probationary or otherwise, if the employee's failure to submit to sexual advances made by a supervisor was a motivating factor in the termination.

**INSTRUCTION NO. 5**

**Elements: Retaliation**

Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act prohibit employers from retaliating against employees who oppose unlawful employment practices of the employer.

To establish a case of unlawful retaliation, Jami Steeg must prove, by a preponderance of the evidence, each one of the following elements:

(1) Jami Steeg engaged in protected activity by opposing Bill Burgess's sexually harassing conduct and/or reporting that conduct to management-level officials at the United States Department of Agriculture; and

(2) The United States Department of Agriculture had knowledge of Jami Steeg's opposition to the sexual harassment; and

(3) Jami Steeg was terminated; and

(4) The United States Department of Agriculture terminated Jami Steeg because of Jami Steeg's opposition to and/or reporting of Bill Burgess's sexual harassment.

Concerning the first element, Jami Steeg need not prove the merits of her claims of sexual harassment to succeed in proving her claim of retaliation, but only that she was acting under a reasonable, good faith belief that her right to be free from workplace sexual harassment was violated.

Concerning the second element, an employer is deemed to have knowledge of protected activity if an employee reported an unlawful employment practice to a supervisor, department head, or other person who has been authorized – or is reasonably believed by a complaining

employee to have been authorized – to receive and respond to or forward such complaints to management.

Concerning the fourth element, that of causal connection, an employer is entitled to operate its business using its own business judgment. Neither a court nor a jury sits as a "super personnel department" to review an employer's business decisions. As a result, you may not return a verdict for Jami Steeg just because you might disagree with the United States Department of Agriculture's decision or believe it to be harsh or unreasonable. Jami Steeg was a probationary employee at the time of her termination. Therefore, the United States Department of Agriculture could terminate Jami Steeg's employment for any reason, or no reason. However, in a retaliation claim, the United States Department of Agriculture may not terminate an employee, probationary or otherwise, solely because the employee opposed or made reports of workplace sexual harassment.

Ultimately, in a retaliation claim, you must decide whether Jami Steeg's rejection of Bill Burgess's sexual advancements and/or reports of sexual harassment had a determinative effect on the United States Department of Agriculture's decision to terminate her employment. "Determinative effect" means that if not for Jami Steeg's rejection of Bill Burgess's sexual advances or her reports of sexual harassment to management officials, her termination by the United States Department of Agriculture would not have occurred.

## INSTRUCTION NO. 6

### General Damages

If you find that the United States Department of Agriculture violated Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, then you must determine whether it has caused Jami Steeg damages and, if so, you must determine the amount of those damages. You should not conclude from the fact that I am instructing you on damages that I have any opinion as to whether Jami Steeg has proved liability, or that Jami Steeg is entitled to any damages. That is all for you to decide.

Jami Steeg must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not on speculation or guesswork. On the other hand, Jami Steeg need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

## INSTRUCTION NO. 7

### Back Pay

If you find by a preponderance of the evidence that Jami Steeg was terminated because of hostile work environment sexual harassment, quid pro quo sexual harassment, and/or retaliation, as explained in Instructions No. 3, 4, and 5, and that Jami Steeg lost income as a result, then Jami Steeg is entitled to recover the amount of back pay she would have earned in her employment with the United States Department of Agriculture if she had not been terminated from March 15, 2012 to the date of your verdict, minus the amount of earnings that she received from other employment during that time.

Back pay includes the amounts the evidence shows Jami Steeg would have earned had she remained an employee of the United States Department of Agriculture. These amounts include wages or salary. You must subtract the amounts of earnings the United States Department of Agriculture proves by a preponderance of the evidence Jami Steeg earned or reasonably could have earned during the period in question. Do not subtract any amount of unemployment benefits Jami Steeg may have received.

Back pay additionally includes any lost benefits, including pension benefits and all other fringe benefits, such as sick leave, vacation pay, life insurance, dental insurance, health insurance, and accidental death insurance.

Do not include as damages interest on wages.

## INSTRUCTION NO. 8

### Front Pay

If you find by a preponderance of the evidence that Jami Steeg was terminated because of hostile work environment sexual harassment, quid pro quo sexual harassment, and/or retaliation, as explained in Instructions No. 3, 4, and 5, and that Jami Steeg lost future wages as a result, you must calculate an award of front pay.

Front pay is a form of future damages. To calculate an award of front pay, you must determine the difference, if any, between the amount that you believe Jami Steeg will earn, or would reasonably be able to earn, through other employment, and the amount she would have earned had she continued to work at the United States Department of Agriculture. You must subtract the amounts of future earnings the United States Department of Agriculture proves by a preponderance of the evidence that Jami Steeg reasonably could earn in the future.

Front pay may be awarded only for the period of time that you determine will be required for Jami Steeg to obtain employment earning wages comparable to the wages she earned at the United States Department of Agriculture, but in no event shall an award of front pay be made for a period of time beyond the date when Jami Steeg would have voluntarily resigned or retired from the United States Department of Agriculture.

Your award of front pay must be based upon the evidence presented and may not be based upon speculation or conjecture. You should not award front pay for any period of time beyond that which you can make a reasonable determination based on the evidence as to Jami Steeg's potential job opportunities, skills, education, and earning ability.

## INSTRUCTION NO. 9

### Duty to Mitigate

You are instructed that any person, such as Jami Steeg, who claims economic damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages – that is, to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.   The United States Department of Agriculture bears the burden to prove that Jami Steeg failed to use reasonable care and diligence to mitigate damages.   To meet this burden, the United States Department of Agriculture must prove that:

(1) There were substantially equivalent positions that were available; and

(2) Jami Steeg failed to use reasonable care and diligence in seeking those positions.

Substantially equivalent positions are positions that would have provided virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status.   The reasonableness of the effort to find substantially equivalent employment should be evaluated in light of Jami Steeg's individual characteristics and the characteristics of the job market.

So, if you should find from the preponderance of the evidence that Jami Steeg failed to seek out or take advantage of a business or employment opportunity that was reasonably available under all the circumstances shown by the evidence, then you should reduce the amount of Jami Steeg's damages by the amount that could have been reasonably realized if she had taken advantage of such opportunity.

## INSTRUCTION NO. 10

### Compensatory Damages

If you find in favor of Jami Steeg, then you must award such sum as you find by the preponderance of the evidence will fairly and justly compensate Jami Steeg for any damages you find she sustained as a direct result of sexual harassment and/or retaliation against her.

If you find that that Jami Steeg proved one or more of her claims against the United States Department of Agriculture, then you must determine an amount that is fair compensation for her compensatory damages. You may award these damages only for injuries that are proved to have been caused by the United States Department of Agriculture's alleged wrongful conduct. The damages you award must be fair compensation, no more and no less.

No evidence of monetary value of such intangible injuries such as pain and suffering, humiliation or inconvenience has been, or need be, introduced into evidence. A person claiming such injury need not prove injury by use of an expert. You may determine whether or not Jami Steeg suffered injuries by the testimony presented by witnesses. There is no exact standard for fixing the compensation to be awarded for these elements of damages. Any award you make should be fair in light of the evidence presented at trial.

In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork. On the other hand, the law does not require that the Plaintiff prove the amount of these losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

Remember, throughout your deliberations, you must not engage in any speculation, guess, or conjecture, and you may not award damages under this instruction by way of punishment or through sympathy.

## VERDICT FORM NO. 1

### Hostile Work Environment Sexual Harassment

Do you find from a preponderance of the evidence that the Plaintiff, Jami Steeg, has established each of the elements of Hostile Work Environment Sexual Harassment as stated in Instruction No. 3 on pages 9–11 of these Instructions?

YES _____                              NO __✓_____

Redacted

Foreperson

___11-10-2016___

Date

**PLEASE PROCEED TO VERDICT FORM NO. 2.**

Redacted

Redacted

Redacted

Redacted

FILED
VANESSA L. ARMSTRONG, CLERK
NOV 1 0 2016
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

## VERDICT FORM NO. 2

### Quid Pro Quo Sexual Harassment

Do you find from a preponderance of the evidence that the Plaintiff, Jami Steeg, has established each of the elements of Quid Pro Quo Sexual Harassment as stated in Instruction No. 4 on pages 12–13 of these Instructions?

YES _____                              NO __✓_____

Redacted

Foreperson

11-10-2016
_____
Date

FILED
VANESSA L. ARMSTRONG, CLERK
NOV 10 2016
WEST'N. DIST. KENTUCKY

**PLEASE PROCEED TO VERDICT FORM NO. 3.**

Redacted

Redacted

Redacted

Redacted

## VERDICT FORM NO. 3

### Retaliation

Do you find from a preponderance of the evidence that the Plaintiff, Jami Steeg, has established each of the elements of Retaliation as stated in Instruction No. 5 on pages 14–15 of these Instructions?

YES _____                                    NO _____

Redacted

Foreperson

_____ 11-10-2016 _____
Date

**IF YOU ANSWERED "NO" TO VERDICT FORM NO. 1, NO. 2, AND NO. 3, THEN YOUR VERDICT IS COMPLETE AND YOU SHOULD RETURN TO THE COURTROOM.**

**IF YOU ANSWERED "YES" TO VERDICT FORM NO. 1, NO. 2, AND/OR NO. 3, PLEASE PROCEED TO VERDICT FORM NO. 4.**



## VERDICT FORM NO. 4

### Compensatory Damages

If you answered "YES" above to whether Jami Steeg proved her claims of 1) Hostile

Work Environment Sexual Harassment, and/or 2) Quid Pro Quo Sexual Harassment, and/or 3)

Retaliation, do you find from a preponderance of the evidence that under Instruction No. 10, the

Plaintiff, Jami Steeg, suffered compensatory damages which were proximately caused by the

unlawful conduct for which you have found the United States Department of Agriculture liable?


YES _____                                                    NO _____


If your answer is "NO," please proceed to Verdict Form No. 5.

If your answer is "YES," then under the law as given to you in Instructions No. 6 and 10,

state the amount of compensatory damages that Jami Steeg should be awarded from the United

States Department of Agriculture.


AMOUNT $_____


_____
Foreperson

_____
Date


**PLEASE PROCEED TO VERDICT FORM NO. 5.**

**VERDICT FORM NO. 5**

**Back Pay**

If you answered "YES" above to whether Jami Steeg proved her claims of 1) Hostile Work Environment Sexual Harassment, and/or 2) Quid Pro Quo Sexual Harassment, and/or 3) Retaliation, do you find from a preponderance of the evidence that under Instruction No. 7, the Plaintiff, Jami Steeg, lost wages as a result of the United States Department of Agriculture's termination of her in violation of Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act?

YES _____                                    NO _____

If your answer is "YES," then under the law as given to you in Instructions No. 6 and 7 state the amount of back pay that Jami Steeg should be awarded from the United States Department of Agriculture from March 15, 2012 to the date of this verdict, less any amount that the United States Department of Agriculture has proven by a preponderance of the evidence that Jami Steeg earned in subsequent employment or could have earned by exercising reasonable diligence in finding suitable employment.

AMOUNT $_____

_____
Foreperson

_____
Date

**PLEASE PROCEED TO VERDICT FORM 6.**

## VERDICT FORM NO. 6

### Front Pay

If you answered "YES" above to whether Jami Steeg proved her claims of 1) Hostile

Work Environment Sexual Harassment, and/or 2) Quid Pro Quo Sexual Harassment, and/or 3)

Retaliation, do you find from a preponderance of the evidence that under Instruction No. 8, the

Plaintiff, Jami Steeg, lost future wages as a result of the United States Department of

Agriculture's termination of her in violation of Title VII of the Civil Rights Act of 1964 and the

Kentucky Civil Rights Act?


YES _____                                    NO _____


If your answer is "YES," then under the law as given to you in Instructions No. 6 and 8

state the amount of future wages that Jami Steeg should be awarded from the United States

Department of Agriculture, less any amount that the United States Department of Agriculture has

proven by a preponderance of the evidence that Jami Steeg could earn in the future by exercising

reasonable diligence in finding suitable employment.


AMOUNT $_____


_____
Foreperson

_____
Date

**YOUR VERDICT IS NOW COMPLETE.  PLEASE RETURN TO THE COURTROOM.**